IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAFIQ THOMPSON, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PHILA. PRISON SYSTEM *et al.*, | : | No. 18-366 |
| *Defendants* | : | |

# MEMORANDUM

PRATTER, J.                                                                                                    APRIL 20, 2021

Rafiq Thompson brings this *pro se* action under 42 U.S.C. § 1983 for injuries he allegedly sustained when he was arrested and later held at a hospital, detention center, and correctional facility. Two defendants, Corizon Health, Inc. ("Corizon") and the Philadelphia Prison System, have filed motions to dismiss Mr. Thompson's complaint against them.[1] For the reasons that follow, the Court grants both motions to dismiss.

## BACKGROUND

In his complaint, Mr. Thompson alleges that he suffered injuries to his head, left eye, right hand, and back when he was arrested in March 2016. Doc. No. 3 (Compl.) at 5. Following his arrest, Mr. Thompson asserts that he was held at Penn Presbyterian Hospital from March 11, 2016 to March 25, 2016. *Id.* Mr. Thompson also claims that he received no medical treatment after he was eventually transferred from the hospital to the detention center and later Curran-Fromhold Correctional Facility ("CFCF"). *Id.* Lastly, Mr. Thompson alleges that he was assaulted at CFCF, which aggravated his previous injuries, but that he received no medical treatment and was placed in segregation. *Id.* He states that these events took place from March 25, 2016 until December

---

[1]  In December 2020, the Court ordered Mr. Thompson to respond to both motions to dismiss and gave him 60 days to do so. *See* Doc. No. 20. Mr. Thompson did not comply with the Court's order and has not otherwise responded to the defendants' motions to dismiss or contacted the Court.

1

22, 2016, but provides no further specifics in his complaint about any of these alleged incidents. *Id.* at 4.

After he was assaulted at CFCF, Mr. Thompson alleges that all of his grievances and sick calls were ignored. *Id.* at 6. However, he also states that he was taken to Penn Presbyterian Hospital, apparently after he was allegedly assaulted, for imaging to be performed related to a head injury. *Id.* at 7.

Mr. Thompson seeks relief pursuant to 42 U.S.C. § 1983 because he allegedly did not receive proper medical care while in custody, which would be a violation of his constitutional rights. He requests $500,000.00 in damages. *Id.* at 8.

Because Mr. Thompson is proceeding *pro se*, the Court liberally construes his complaint. Although it is unclear from his complaint, it appears that Mr. Thompson was a pretrial detainee when he sustained his alleged injuries and, thus, his claim for inadequate medical care would be a violation of the Due Process Clause of the Fourteenth Amendment.[2]

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, a complaint needs "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

---

[2] "[T]he Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003) (noting that Fourteenth Amendment claims for inadequate medical care are evaluated under the standard used to evaluate similar claims under the Eighth Amendment). *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.") (citation omitted).

Courts are obliged to liberally construe *pro se* complaints. *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). When reviewing a complaint, a court must first separate, and then disregard, any legal conclusions from the well-pleaded factual allegation and then determine whether the facts alleged state a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)). A plaintiff fails to demonstrate an entitlement to relief where the facts only allow the court to infer "the mere possibility of misconduct." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Both Corizon and the Philadelphia Prison System, through their separate motions, ask the Court to dismiss Mr. Thompson's complaint. Corizon argues that, as to a private corporation such as Corizon, Mr. Thompson was required to state a claim showing that Corizon maintained a policy, with deliberate indifference to the consequences, that caused him constitutional harm, but that Mr. Thompson failed to articulate such allegations. Similarly, the Philadelphia Prison System argues that Mr. Thompson has failed to demonstrate that there was a specific municipal policy which caused his injuries and, thus, it cannot be held liable under 42 U.S.C. § 1983.

**I.    Corizon**

For a private corporation to be held liable under 42 U.S.C. § 1983, a plaintiff must plead facts showing that the private corporation "established and maintained a policy, practice, or custom which directly caused [him] constitutional harm" and that it did so "with deliberate indifference to the consequences." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989). Deliberate indifference exists "where a prison official knows of a prisoner's need for medical

3

treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment." *Lopez v. Corr. Med. Servs., Inc.*, 499 F. App'x 142, 146 (3d Cir. 2012).

The Third Circuit Court of Appeals has stated that a § 1983 claim against a private corporation providing medical care in prisons should be analyzed under *Monell* because such a corporation "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *Natale*, 318 F.3d at 583 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). In *Monell*, the United States Supreme Court noted that local governing bodies could only be sued directly under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694. Thus, a plaintiff bringing a claim against a private corporation, like Corizon, that provides health care services at a correctional institution, must assert that the corporation "had [a] policy, practice, or custom which led to [the plaintiff's] alleged injury, or had any direct involvement in the alleged wrongful conduct." *Weigher v. Prison Health Servs.*, 402 F. App'x 668, 670 (3d Cir. 2010).

Here, Corizon argues that Mr. Thompson's complaint should be dismissed because he has failed to state a claim or plead any facts showing that Corizon maintained a policy that directly caused him harm and that Corizon was deliberately indifferent. Corizon contends that Mr. Thompson has not described when he was allegedly refused medical treatment, who refused it, or what policy or custom was the driving force behind his alleged constitutional violations. Mr. Thompson appears to argue that his requests for medical attention were ignored and that this happened to other people as well. Compl. at 7-8. At the same time, Mr. Thompson states that he

4

was taken to Penn Presbyterian Hospital to undergo imaging for a wound on his head, presumably after the assault he alleges occurred at CFCF. *Id.* at 7. Thus, it is unclear when or how Mr. Thompson was denied treatment and for what ailment, what treatment he did receive that may have been wrongful or insufficient, or when the alleged assault occurred.

At best, Mr. Thompson's complaint is confusing. For example, Mr. Thompson states that he suffered injuries after being arrested on or around March 11, 2016, but then states that the events giving rise to his claims occurred at the detention center and CFCF, from March 25, 2016 to December 22, 2016. *Id.* at 4-5. However, he vaguely describes one alleged assault at CFCF and it seems that he was taken to the hospital afterwards to get treatment for a re-aggravated head injury. Mr. Thompson also spent two weeks at the hospital after he was arrested, but he does not describe why he was there for two weeks or what treatment, if any, he received.

Therefore, Mr. Thompson has failed to allege in his complaint that Corizon had or maintained a policy that caused him harm. Therefore, the Court grants without prejudice Corizon's motion to dismiss Mr. Thompson's complaint. Mr. Thompson will be permitted to file an amended complaint.

## II. Philadelphia Prison System

Mr. Thompson brings the same claims against the Philadelphia Prison System ("PPS"). PPS first argues that Mr. Thompson cannot state a claim for relief against it because PPS is not an entity capable of being sued. *See* 53 P.S. 16257 (providing that municipal departments will no longer have "separate corporate existence[s], and hereafter all suits growing out of their transactions . . . shall be in the name of the city of Philadelphia"); *see also Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014) (noting that governmental subunits, such as police departments, cannot face liability under § 1983 because they are "not distinct from the

5

municipality which" they are part of). While Mr. Thompson's claims under § 1983 might not be viable against PPS, they could be viable against the City of Philadelphia ("the City"). Because the Court is required to construe Mr. Thompson's complaint liberally, his claims against PPS will be considered as if they were claims against the City itself.

The City contends, if the Court interprets Mr. Thompson's claims as against the City itself, that Mr. Thompson has still failed to state a claim for relief under either § 1983 or Pennsylvania law.[3] As discussed above, a municipality faces liability under § 1983 when an injury is caused as a result of a specific government policy or custom. *Monell*, 436 U.S. at 694. A policy exists when a decisionmaker with final authority "issues an official proclamation, policy, or edict," whereas a custom is the result of practices that are "so permanent and well-settled as to virtually constitute law." *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (cleaned up).

In order to recover from the City under § 1983, a plaintiff must: "(1) identify a policy or custom that deprived [him] of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and [his] injury." *Torres v. City of Allentown*, No. 07-cv-1934, 2008 WL 2600314, at *4 (E.D. Pa. June 30, 2008) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397 (1997).

Like his claim against Corizon, Mr. Thompson has not pled a viable *Monell* claim against the City. His complaint, even when liberally construed, does not identify a City policy or custom

---

[3] As to Pennsylvania law, the City argues that any negligence claim Mr. Thompson might be asserting against it in his complaint should be dismissed because any such claim against the City is barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §§ 8541 *et seq.* The City argues that a plaintiff can only bring a negligence claim against a Pennsylvania municipality if one of the eight exceptions listed in § 8542 of the Act applies. However, because the Court is granting the City's motion to dismiss and giving Mr. Thompson leave to file an amended complaint, the Court will not address at this time whether Mr. Thompson has stated a potentially viable negligence claim against the City.

6

that allegedly caused his injuries and violated his constitutional rights. In its current form, Mr. Thompson's complaint contains allegations that he sustained multiple injuries during his arrest in March 2016, that he spent roughly two weeks in the hospital afterwards (the complaint does not identify what treatment he received there), that he was later assaulted at CFCF, and that at all times he was denied medical treatment. Despite this, Mr. Thompson has not pled sufficient facts to state a claim under § 1983. While Mr. Thompson alleges that his grievances and sick calls were ignored, no other details are provided in his complaint, such as when he made these requests, when they were ignored, and who ignored them. And it appears that after Mr. Thompson was allegedly assaulted at CFCF, he was actually taken to Penn Presbyterian Hospital for medical attention. Mr. Thompson has failed to link his alleged injuries to a municipal decisionmaker or other policy, which the Third Circuit Court of Appeals has held is necessary in order to state a *Monell* claim. *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (noting that a complaint does not state a *Monell* claim where it "fail[s] to allege conduct by a municipal decisionmaker").

Accordingly, the Court will grant the City's motion to dismiss without prejudice. That said, Mr. Thompson will be permitted to file an amended complaint, giving him the opportunity to plead specific facts stating what injuries he received and when, when he was denied medical treatment, when he lodged his alleged grievances and made sick calls, and the nature of the policy (including a description of the policy and who oversaw it) that he claims resulted in deliberate indifference to his medical needs.

## CONCLUSION

For the reasons set forth in this Memorandum, the Court grants both Corizon and the Philadelphia Prison System's motions to dismiss with prejudice. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
